**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| VLADIMIR OKHOTNIKOV, | ) | |
| JANE DOE a/k/a LOLA FERRARI, | ) | |
| MIKAIL SERGEEV, | ) | Case No. 22-CV-03978 |
| SERGEY MASLAKOV, | ) | |
| SAMUEL D. ELLIS, | ) | Judge Jorge L. Alonso |
| MARK F. HAMLIN, | ) | |
| SARAH L. THEISSEN, | ) | |
| CARLOS L. MARTINEZ, | ) | |
| RONALD R. DEERING, | ) | |
| CHERI BETH BOWEN, and | ) | |
| ALISHA R. SHEPPERD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPLY IN SUPPORT OF DEFENDANT VLADIMIR OKHOTNIKOV'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT .................................................................................................................... 1

I.    Morrison's Transactional Test Is Still The Relevant Test for Extraterritoriality ............... 1

    A.    Dodd-Frank Section 929P(b) is Jurisdictional and Does Not Abrogate
*Morrison's* Substantive Transactional Test ........................................................ 1

        1.    Section 929P(b)'s Plain Language Unambiguously Applies to
Subject-Matter Jurisdiction ........................................................... 2

        2.    Legislative History Does Not Support Extending Section 929P(b)
to the Merits of Extraterritoriality ................................................ 4

        3.    Section 929P(b) Lacks a Clear Intent of Extraterritorial
Application .................................................................................... 6

    B.    The Complaint Fails to Satisfy the *Morrison* Test ................................... 7

II.    This Court Lacks Personal Jurisdiction Over Okhotnikov ................................... 8

III.    The SEC Cannot Satisfy the *Howey* Test ...................................................... 11

IV.    Plaintiff Fails to Allege Securities Fraud with Particularity ............................. 12

    A.    The Complaint Fails to Allege that Okhotnikov Acted with Scienter ................. 15

    B.    The Complaint Fails to Allege that Okhotnikov Can be Liable Pursuant to
Section 17(a) Because it Only Applies to "Sellers" of Securities ...................... 17

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012)......................................................................7, 8

*AFI Holdings of Ill., Inc. v. Nat'l Broad. Co.*,
    239 F. Supp. 3d 1097 (N.D. Ill. 2017) ......................................................8

*Autry v. Nw. Premium Servs., Inc.*,
    144 F.3d 1037 (7th Cir. 1998) ..................................................................11

*Barnhill v. Johnston*,
    503 U.S. 393 (1992).....................................................................................4

*Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*,
    366 F. Supp. 2d 792 (W.D. Wis. 2005) ..................................................15

*be2 LLC v. Ivanov*,
    642 F.3d 555 (7th Cir. 2011) .....................................................................10

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)........................................................8

*Calder v. Jones*,
    465 U.S. 783 (1984).....................................................................................11

*Carr v. United States*,
    560 U.S. 438 (2010).....................................................................................3

*CFTC v. Worth Bullion Grp., Inc.*,
    717 F.3d 545 (7th Cir. 2013) .....................................................................3

*Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*,
    2017 WL 4269005 (N.D. Ill. Sept. 26, 2017) .........................................9

*Conn. Nat'l Bank v. Germain*,
    503 U.S. 249 (1992).....................................................................................3

*E.E.O.C. v. Arabian American Oil Co.*,
    499 U.S. 244 (1991).....................................................................................6

*Edberg v. Neogen Corp.*,
    17 F. Supp. 2d 104 (D. Conn. 1998)........................................................9

*Emery v. Am. Gen. Fin., Inc.*,
    134 F.3d 1321 (7th Cir. 1998) ..................................................................15

*Endico v. Fonte*,
    485 F. Supp. 2d 411 (S.D.N.Y. 2007)........................................................11

*Engine Mfrs Ass'n v. S. Coast Air Quality Mgmt. Dist*,
    541 U.S. 246 (2004).....................................................................................3

*Frymire v. Peat, Marwick, Mitchell & Co.*,
    657 F. Supp. 889 (N.D. Ill. 1987) ........................................................17

*Gross v. FBL Financial Services, Inc.*,
    557 U.S. 167 (2009)................................................................................3

*In re Guidant Corp. Sec. Litig.*,
    536 F. Supp. 2d 913 (S.D. Ind. 2008) ................................................16

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    571 U.S. 161 (2014)................................................................................5

*Ill. v. Hemi Grp. LLC*,
    622 F.3d 754 (7th Cir. 2010) ................................................................9

*Kauthar SDN BHD v. Sternberg*,
    149 F.3d 659 (7th Cir. 1998) ................................................................6

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in*
    *Amministrazione Straordinaria*,
    937 F.2d 44 (2d Cir. 1991).....................................................................9

*Laramore v. Illinois Sports Facilities Auth.*,
    722 F. Supp. 443 (N.D. Ill. 1989) .......................................................16

*McKee v. Pope Ballard Shepard & Fowle, Ltd.*,
    604 F. Supp. 927 (N.D. Ill. 1985) .......................................................15

*Mid-Am. Tablewares v. Mogi Trading Co.*,
    100 F.3d 1353 (7th Cir. 1996) .............................................................10

*Mims v. Arrow Financial Services, LLC*,
    565 U.S. 368 (2012)................................................................................5

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010).......................................................................*passim*

*NLRB v. SW General, Inc.*,
    580 U.S. 288, 137 S. Ct. 929 (2017).....................................................5

*Our Country Home Enterprises, Inc. v. Comm'r of Internal Revenue*,
    855 F.3d 773 (7th Cir. 2017) ................................................................3

*Patriotic Veterans, Inc. v. Indiana*,
    736 F.3d 1041 (7th Cir. 2013) ..............................................................5

*Perry v. Sullivan*,
    207 F.3d 379 (7th Cir. 2000) ..............................................................11

*Petrakopoulou v. DHR Int'l, Inc.*,
    626 F. Supp. 2d 866 (N.D. Ill. 2009) ..................................................15

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997)................................................................................3

*Romero v. Int'l Terminal Operating Co.*,
    358 U.S. 354 (1959)................................................................................6

*SEC v. Chicago Convention Ctr., LLC*,
    961 F. Supp. 2d 905 (N.D. Ill. 2013) ..............................................3, 5

*SEC v. CKB168 Holdings, Ltd.*,
    210 F. Supp. 3d 421 (E.D.N.Y. 2016) ..............................................16

*SEC v. Glenn W. Turner Enterprises, Inc.*,
    474 F.2d 476 (9th Cir. 1973) ..............................................11

*SEC v. Homa*,
    2000 WL 1100783 (N.D. Cal. Ill. Aug. 4, 2000) ..............................................14

*SEC v. Milan Cap. Grp., Inc.*,
    2000 WL 1682761 (S.D.N.Y. Nov. 9, 2000) ..............................................16

*SEC v. PlexCorps*,
    2018 WL 4299983 (E.D.N.Y. Aug. 9, 2018)..............................................9, 10

*SEC v. Santos*,
    355 F. Supp. 2d 917 (N.D. Ill. Nov. 10, 2003) ..............................................14

*SEC v. Scoville*,
    913 F.3d 1204 (10th Cir. 2019) ..............................................2, 4, 5, 7

*Smith v. Premier Dermatology*,
    2019 WL 4261245 (N.D. Ill. Sept. 9, 2019) ..............................................3

*Smith-Brown v. Ulta Beauty, Inc.*,
    2019 WL 932022 (N.D. Ill. Feb. 26, 2019) ..............................................13

*Spivey v. Vertrue, Inc.*,
    528 F.3d 982 (7th Cir. 2008) ..............................................4

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)..............................................6

*Suburban Buick, Inc. v. Gargo*,
    2009 WL 1543709 (N.D. Ill. May 29, 2009) ..............................................12

*Sullivan v. Barclays PLC*,
    2017 WL 685570 (S.D.N.Y. Feb. 21, 2017)..............................................7

*United Hous. Found., Inc. v. Forman*,
    421 U.S. 837 (1975)..............................................12

*United Phosphorus, Ltd. v. Angus Chem. Co.*,
    43 F. Supp. 2d 904 (N.D. Ill. 1999) ..............................................9

*Valero Energy Corp. v. United States*,
    569 F.3d 626 (7th Cir. 2009) ..............................................5

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) ..............................................14

**Statutes**

Dodd-Frank Wall Street Reform and Consumer Protection Act,
  Pub. L. No. 111-203, § 929P(b), 124 Stat. 1376 (2010) ................................................ *passim*

Securities Act of 1933

  § 22 , 15 U.S.C. § 77v .............................................................................................2

Securities and Exhange Act of 1934

  § 10(b), 15 U.S.C. § 78j .................................................................................. *passim*

  § 27, 15 U.S.C. § 78aa ..........................................................................................2, 3

**Rules**

Fed. R. Civ. P. 9(b) ..............................................................................1, 12, 14, 15

Fed. R. Civ. P. 12(h)(2) ......................................................................................11

**Other Authorities**

U.S. Br., *Morrison v. Nat'l Australia Bank Ltd.*,
  2010 WL 719337 (Feb. 26, 2010) ......................................................................4, 6

156 Cong. Rec. H5233 .........................................................................................5

# INTRODUCTION

The SEC's Memorandum of Law in Opposition to Defendant Vladimir Okhotnikov's Motion to Dismiss (Dkt# 84) ("Opposition") fails to clarify the Complaint's obfuscated pleadings. The SEC's Opposition relies on flawed case law and attempts to introduce new facts and transmogrify the Complaint's pleadings in an effort to survive dismissal. These efforts are to no avail. The Complaint does not make a prima facie showing of personal jurisdiction, does not apply to Okhotnikov's extraterritorial conduct, and does not have sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure.

For the reasons stated below and in Okhotnikov's Brief in Support of His Motion to Dismiss (Dkt# 73) ("Motion"), the SEC's claims against Okhotnikov should be dismissed.

# ARGUMENT

## I. Morrison's Transactional Test Is Still The Relevant Test for Extraterritoriality

### A. Dodd-Frank Section 929P(b) is Jurisdictional and Does Not Abrogate *Morrison's* Substantive Transactional Test

It is the SEC that misinterprets extraterritoriality. The SEC conflates federal subject-matter jurisdiction with questions of merit by arguing that Section 929P(b) of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank") abrogated the U.S. Supreme Court's unanimous holding in *Morrison*. Section 929P(b) modified the *jurisdictional* provisions of the Exchange Act and Securities Act by adding the following language:

> The district courts of the United States and the United States courts of any Territory shall have jurisdiction of an action or proceeding brought or instituted by the Commission or the United States alleging a violation . . . involving--
> > (1) conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors; or
> > (2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States.

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 929P(b), 124 Stat. 1376, 1864-65 (2010); 15 U.S.C. § 78aa (entitled "Jurisdiction of offenses and suits"); 15 U.S.C. § 77v (same).

In comparison, the Supreme Court in *Morrison* held that the question of what conduct Section 10(b) reaches is a *merits question*, not a jurisdictional question. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) ("[T]o ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits, which is a merits question."). Thus, comparing Dodd-Frank Section 929P(b) to *Morrison* is like comparing apples to oranges: the former concerns the court's power to hear a case, while the latter concerns the types of conduct prohibited by Section 10(b). The two present entirely different questions for the court. *See id.* ("[Subject-matter jurisdiction] presents an issue quite separate from the question whether the allegations the plaintiff make entitle him to relief.").

Nevertheless, the SEC believes that Section 929P(b) abrogated *Morrison* and instituted a "conduct and effect" test to determine the scope of SEC enforcement actions. (Opp. at 13.) The SEC cites no Seventh Circuit case law to support its argument. Rather, the SEC's argument hinges on the *Tenth Circuit's* decision in *SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019). In *Scoville*, the court held that Congress intended that Section 929P(b)'s "conduct and effects" test should apply to the substantive antifraud provisions. A closer examination of the *Scoville* decision shows why it is wrong and why the Court should not apply it here.

### 1. Section 929P(b)'s Plain Language Unambiguously Applies to Subject-Matter Jurisdiction

First, and most importantly, *Scoville* erred by going beyond the unambiguous language of Section 929P(b), which addresses the court's subject-matter jurisdiction only. The Court's inquiry into interpreting Section 929P(b) must start with examining whether the "language at issue has a

plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); *CFTC v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 550 (7th Cir. 2013). "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175-76 (2009) (quoting *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004)).

"When the words of a statute are unambiguous, this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (cleaned up). "When a statute is unambiguous, we must enforce the plain meaning of the language enacted by Congress." *Smith v. Premier Dermatology*, 2019 WL 4261245, at *4 (N.D. Ill. Sept. 9, 2019) (Alonso, J.) (quoting *Our Country Home Enterprises, Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 791 (7th Cir. 2017)). "When the statutory language is plain, the *sole* function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Carr v. United States*, 560 U.S. 438, 458 (2010) (emphasis added) (internal quotation marks and citation omitted).

The crucial language at issue in Section 929P(b) is clear and unambiguous: "The district courts of the United States . . . shall have jurisdiction of an action or proceeding . . . ." Pub. L. 111-203, §§ 929P(b)(1), (2), 124 Stat. 1376, 1864 (2010). Section 929P(b) refers plainly to the power of a court to hear a dispute. Indeed, the court in *Chicago Convention Center* found that Section 929P(b) did not express a clear intent to revoke *Morrison*. *SEC v. Chicago Convention Ctr., LLC*, 961 F. Supp. 2d 905, 911 (N.D. Ill. 2013). Rather, "Section 929P(b), on its face, merely addresses subject-matter jurisdiction." *Id.* The court in *Morrison* itself also found that 15 U.S.C. § 78aa, the Exchange Act jurisdictional provision modified by Section 929P(b), conveys federal subject-

matter jurisdiction for the court "to adjudicate the question whether § 10(b) applies to [the challenged] conduct." *Morrison*, 561 U.S. at 254.[1] Section 929P(b) is unambiguously a subject-matter provision and does not modify the test for extraterritoriality of Sections 10(b) and 17(a).

Rather than stop at Section 929P(b)'s unambiguous language, the court in *Scoville* erred by introducing legislative history to skew the plain language of Section 929P(b). *See Barnhill v. Johnston*, 503 U.S. 393, 401 (1992) ("[A]ppeals to statutory history are well taken only to resolve 'statutory ambiguity.'") (citation omitted); *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 985 (7th Cir. 2008) ("[L]egislative history can not justify reading a statute to mean the opposite of what it says."). The *Scoville* court recognized that Dodd-Frank "amended only the jurisdictional sections of the securities laws" and "did not make any explicit revisions to the substantive antifraud provisions themselves." *Scoville*, 913 F.3d at 1218. The court should have stopped there by finding that Dodd-Frank's jurisdictional changes do not impact the substantive breadth of Sections 10(b) or 17(a) under *Morrison*. Rather, *Scoville* continued to examine Dodd-Frank's legislative history in order to contort the breadth of Section 929P(b). And in doing so, *Scoville* ignored the clear distinction between federal subject-matter jurisdiction and merits questions. Accordingly, this court should decline to follow *Scoville* and follow the plain language of Section 929P(b) instead.

### 2. *Legislative History Does Not Support Extending Section 929P(b) to the Merits of Extraterritoriality*

<u>Second</u>, even assuming it was proper to examine the legislative history, *Scoville* erred in finding that Dodd-Frank's legislative history supports Section 929P(b)'s abrogation of *Morrison*.

---

[1] Both parties in *Morrison* agreed that the Second Circuit erred in holding that § 10(b)'s reach raised a question of subject-matter jurisdiction. *Morrison*, 561 U.S. at 254. Moreover, the United States, in an *amicus curiae* brief submitted in *Morrison* and signed by the General Counsel, Deputy General Counsel, and Solicitor of the SEC, agreed that the extraterritorial scope of § 10(b) is a merits question, not jurisdictional. U.S. Br., *Morrison*, 2010 WL 719337, at *9-10 (Feb. 26, 2010) ("The determination whether the defendant's conduct is governed by the law on which the plaintiff bases his claim for relief is generally a merits-related decision.").

The court in *Scoville* relied on statements of Representative Paul Kanjorski to support the court's conclusion that Section 929P(b) extended the reach of the antifraud provisions extraterritorially. *Scoville*, 913 F.3d at 1218. Rep. Kanjorski specifically addressed the decision in *Morrison* and stated that Section 929P(b) was "intended to rebut [*Morrison's*] presumption by clearly indicating that Congress intends extraterritorial application in cases brought by the SEC or the Justice Department." 156 Cong. Rec. H5233, 5235–5239. However, Congress had drafted Section 929P(b) *before* the *Morrison* decision. *Chicago Convention Center*, 961 F. Supp. 2d at 915. Rep. Kanjorski's statements cannot demonstrate an intention to abrogate *Morrison* when the language itself was drafted prior to the decision.[2]

Moreover, the views of just two legislators, Rep. Janjorski and Sen. Reed, are not sufficient to demonstrate any particular congressional intent for Section 929P(b), especially given the extraordinarily broad scale of Dodd-Frank. "What Congress ultimately agrees on is the text that it enacts, not the preferences expressed by certain legislators." *NLRB v. SW General, Inc.*, 580 U.S. 288, 137 S. Ct. 929, 942 (2017); *Valero Energy Corp. v. United States*, 569 F.3d 626, 634 (7th Cir. 2009) ("[T]he view of one senator cannot trump the unambiguous statutory text."). "[T]he views of a single legislator, even a bill's sponsor, are not controlling." *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 385 (2012); *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1053 (7th Cir. 2013).

Congress is well aware that it must distinguish clearly between subject-matter jurisdiction and merits questions. Congress is presumed to be familiar with existing law and the Supreme Court's precedent. *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014).

---

[2] The legislative record contains just one other statement by a legislator, Senator Jack Reed, in support of extending the antifraud statutes extraterritorially. Like Rep. Kanjorski's statements, Sen. Reed's statements came after *Morrison* and therefore cannot evidence legislative intent concerning the relevant language in Section 929P(b) that pre-dated *Morrison*.

Since 1959, the Supreme Court has recognized that questions of extraterritorial application of a claim is a question of merits, not subject-matter jurisdiction. *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 359 (1959); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (finding that the determination whether the defendant's conduct is governed by a law is a question of merits, not jurisdiction). The United States' *amicus curiae* brief in *Morrison* recognized this distinction that extraterritorial application of the antifraud statutes was a question of merits, not jurisdiction. U.S. Br., *Morrison v. Nat'l Australia Bank Ltd.*, 2010 WL 719337, at *9-10 (Feb. 26, 2010). Congress knew that it had to amend the substantive antifraud statutes if it wanted extraterritorial application of those laws. Congress's decision not to amend Sections 10(b) and 17(a) speaks volumes.

Indeed, before being overturned by *Morrison*, the conduct-and-effects test was a test of subject-matter jurisdiction. *See, e.g.*, *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 663 (7th Cir. 1998). Thus, when drafted, the conduct-and-effects test that Congress wrote into Section 929P(b) was focused on subject-matter jurisdiction, not the merits of Sections 10(b) or 17(a). It strains credulity to believe that Congress intended Section 929P(b) to apply to the substantive antifraud statutes in these circumstances.

### 3. Section 929P(b) Lacks a Clear Intent of Extraterritorial Application

<u>Last</u>, any circumstantial evidence about the timing of Dodd-Frank's passage or legislative intent does not negate the longstanding presumption that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) (citation omitted). "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison*, 561 U.S. at 255. The plain language of Section 929P(b) prescribes subject-matter jurisdiction to the courts and it does not modify the substantive antifraud statutes—which were the very subject of

6

*Morrison*. *Scoville* similarly erred when it ignored this principle in favor of relying on unreliable legislative history and the circumstantial timing of the passage of Dodd-Frank to support its conclusion. There is no clear intent of extraterritoriality here.

### B. The Complaint Fails to Satisfy the *Morrison* Test

The Court must decide whether *Morrison*'s transactional test applies because the Complaint does not allege sufficiently that smart contract transactions were "domestic." The SEC contends that "[o]nce investors directed payment of funds from their wallets for the purchase of a slot, the transfer of those funds was irrevocable and the smart contract automatically routed the funds to the sellers' wallets." (Opp. at 16.) In essence, the SEC is contending that because the smart contract purchasers were located in the United States at the time of transacting, irrevocable liability occurred in the United States. Courts have already rejected this argument. Merely pleading that purchasers were located in the United States when making a transaction does not satisfy *Morrison* and cannot withstand a motion to dismiss. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 70 (2d Cir. 2012); *see also Sullivan v. Barclays PLC*, 2017 WL 685570, at *29 (S.D.N.Y. Feb. 21, 2017) (mere allegations that plaintiffs were "U.S. residents who engaged in LIFFE Euribor futures transactions through LIFFE Connect terminals located in the United States" were insufficient to plead a domestic transaction). Taking the SEC's understanding of where irrevocable liability occurred as true would mean that any transaction involving persons located in the United States would be considered a domestic transaction. This is not good policy and is not supported by *Morrison* or *Absolute Activist*.

Importantly, the SEC's oversimplified argument misses the realities of how transactions on the blockchain operate, as other courts have recognized. When purchasers bought a Forsage smart contract on the blockchain (Compl. ¶ 31), the transaction became "irrevocable for the purchaser and seller when the transaction has been crypto graphically validated . . . ." (Mot. at 13

(citing cases).) The Complaint ignores the economic realities of the smart contract transactions as it contains *no* allegations concerning the structure of purchasers' smart contract purchases, beyond specifying that purchasers bought smart contracts on the corresponding blockchains using crypto-asset tokens. (Compl. ¶ 31.) These allegations are insufficient to survive a motion to dismiss. *Sullivan*, 2017 WL 685570, at *29 (dismissing a complaint because it made "no allegations concerning the location of the transactions themselves or the structure of LIFFE transactions, including *Absolute Activist*'s factors concerning the formation of the contracts, the placement of orders, the passing of title and the exchange of money").

## II.     This Court Lacks Personal Jurisdiction Over Okhotnikov

The SEC's Opposition does not remedy the gating deficiency in the Complaint: the Complaint does not establish an individualized showing of personal jurisdiction. To satisfy personal jurisdiction, the SEC must make a *prima facie* showing of jurisdiction with respect to each defendant and each claim. (Mot. at 5.) The SEC's Opposition attempts to remedy this issue by transmuting its impermissible group pleadings and into conduct by Okhotnikov. The Complaint, however, does support the SEC's views.

First, Okhotnikov's statement in his declaration that he is a "co-founder" of Forsage does not equate to an acknowledgment that he controlled Forsage, the smart contracts, or Forsage's website, among other things. The SEC claims that it made "specific factual allegations in the Complaint related to Okhotnikov[.]" (Opp. at 5.) However, all of the paragraphs cited by the SEC in its Opposition concern allegations of conduct by the Founders, not Okhotnikov in his individual capacity. (Compl., ¶¶ 1, 6, 23, 28, 49, 50, 51, 52, 64.). The principle stated in *Berdeaux* and *AFI Holdings* is plainly applicable here. A court cannot rely upon group pleadings to establish personal jurisdiction because it leaves "the Court no basis to discern who did what." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397 (S.D.N.Y. 2021); *AFI Holdings of Ill., Inc. v. Nat'l Broad. Co.*, 239

F. Supp. 3d 1097, 1101-02 (N.D. Ill. 2017); *see also Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, 2017 WL 4269005, at *2 (N.D. Ill. Sept. 26, 2017) (finding the court could not even assess personal jurisdiction due to the pervasiveness of group pleading violations). The SEC's Opposition arguments concerning personal jurisdiction are tainted with this pleading defect. The SEC tries to attribute impermissible group pleadings to Okhotnikov, but the Complaint's allegations are not as clear.

Second, the Complaint does not allege that Okhotnikov, in his individual capacity, restricted U.S. persons from accessing Forsage's website. Instead, the SEC again tries to transform group pleadings to establish jurisdiction over Okhotnikov. The SEC's reliance on *Ill. v. Hemi Grp. LLC*, 622 F.3d 754 (7th Cir. 2010) is similarly misplaced because any alleged restriction of Forsage's website *after* the SEC filed its Complaint is not relevant. "[P]ersonal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 43 F. Supp. 2d 904, 908 (N.D. Ill. 1999).

Third, the SEC's Opposition goes outside of the pleadings by introducing new facts regarding Okhotnikov's alleged "decision to do business with a U.S. platform." (Opp. at 7.) Contrary to the SEC's Opposition, the Complaint does not allege that Cloudflare Inc. is a U.S.-based web hosting platform or that Forsage's website was hosted on U.S.-based servers. Regardless, registration with a U.S.-based company alone does not support personal jurisdiction. *See SEC v. PlexCorps*, 2018 WL 4299983, at *16 (E.D.N.Y. Aug. 9, 2018) (citing *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 115 (D. Conn. 1998)).

Fourth, Okhotnikov's alleged use YouTube does not demonstrate purposeful availment. Although the Complaint does allege that Okhotnikov appeared in 45 videos and interviews posted on YouTube (Compl. ¶54), the Complaint does not demonstrate how those videos targeted the United States. Like the creation of a website, the mere creation of YouTube videos, without other information, does not support personal jurisdiction. *See, e.g.*, *PlexCorps*, 2018 WL 4299983, at *14; *see also be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.").

Fifth, Okhotnikov's alleged participation in *three* YouTube interviews with U.S.-based co-defendants must be viewed in comparison to the number of interviews with non-U.S.-based persons. As the SEC stated, "minimum contacts inquiry is one that examines the totality of the circumstances." *Mid-Am. Tablewares v. Mogi Trading Co.*, 100 F.3d 1353, 1361 (7th Cir. 1996). Of the 45 videos and interviews in which the SEC alleges Okhotnikov participated, just *three* were with U.S.-based persons. Other interviews, for instance, were directed at Indonesia or the Philippines. (Compl. ¶81(k), (m).) These three contacts, which are Okhotnikov's *only* individualized contacts with the United States alleged in the Complaint, do not demonstrate purposeful availment when viewed in the totality of the circumstances.

Sixth, the SEC again transmutes the Complaint's group pleadings into alleged conduct by Okhotnikov by arguing that he controlled the content posted to Forsage's website or YouTube. (Opp. at 8.) The Complaint alleges that the "Founders" created, operated, and maintained the Forsage website and YouTube channel. (Compl. ¶¶ 1, 52.) These group pleadings do not provide

defendants, like Okhotnikov, or the Court with the particularity required to assess an individual defendant's contacts with the relevant forum. *See Calder v. Jones*, 465 U.S. 783, 790 (1984).

## III.    **The SEC Cannot Satisfy the *Howey* Test**

The SEC's failure to sufficiently allege that Forsage's smart contracts are investment contracts is not a matter of interpretation as the SEC claims. Rather, it is a matter of the SEC's failure to plead facts that would entitle it to relief—namely, the satisfaction of *Howey*. *Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). This issue is ripe for dismissal.[3] *See Endico v. Fonte*, 485 F. Supp. 2d 411, 414-15 (S.D.N.Y. 2007) (dismissing a complaint for failure to allege that expected profits in interests were derived solely as a result of the efforts of others).

Unlike the traditional Pyramid and Ponzi scheme cases cited by the SEC, the Complaint does not allege that Okhotnikov or the other defendants "controlled the methods by which interests were sold and new members were recruited." (Opp. at 12.); *see also SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 478-79 (9th Cir. 1973) (sponsor controlled the sale of "plans" and the marketing of the plans, whereas purchasers' only contribution was bringing prospective members to meetings). In addition, unlike a pyramid scheme, the Complaint does not allege that Okhotnikov or the other Founders controlled the sale of smart contracts or how the smart contracts were marketed.

In addition, Defendants' alleged statements about Forsage's passive income ability do not support an expectation of profit solely from the efforts of others. (Compl. ¶¶ 54-55.) In deciding

---

[3] Okhotnikov also disputes the SEC's contention that he has "concede[d] the other two elements of *Howey*" because "his Motion only presents argument on the 'expectation of profits' element." (Opp. at 11 n.4.) Parties do not waive or concede arguments by not raising them in a motion to dismiss. *See Perry v. Sullivan*, 207 F.3d 379, 383 (7th Cir. 2000) ("Requiring the defendant to plead all affirmative defenses before the complaint has been clarified would defeat the purpose of the pleading rules. No cases hold that this is the rule."); *see also* Fed. R. Civ. P. 12(h)(2).

whether a contract satisfies the *Howey* test, "form should be disregarded for substance and the emphasis should be on economic reality." *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 848, (1975) (internal quotation marks and citation omitted). Statements about the efforts required of purchasers cannot be used to support the satisfaction of *Howey*'s third element.

## IV.    Plaintiff Fails to Allege Securities Fraud with Particularity

Nothing in the SEC's opposition shores up the pleading defects identified by Okhotnikov in his Motion. Given the opportunity to set forth the particulars supporting the securities fraud claims as to Okhotnikov, the SEC merely reiterates the insufficient, group-pled, and conclusory allegations of its Complaint without adequate explication or bolstering. In a desperate attempt to satisfy its burden, Plaintiff boldly asserts that the Complaint "describe[s] in detail" Okhotnikov's role. (Opp. at 19.) However, examination of the paragraphs cited by the SEC demonstrates that the majority of the paragraphs cited do not even reference Okhotnikov. For example, the SEC claims that the Complaint describes "how Okhotnikov and the other co-founders developed Forsage and the smart contracts[.]" (Opp. at 19 (citing ¶¶ 27-44.)) However, paragraphs 27-44 do not contain a single reference to Okhotnikov. Similarly, the SEC claims that the Complaint describes "why Forsage was a pyramid and Ponzi scheme and how Okhotnikov knew, or recklessly disregarded, that Forsage was not offering a consumable product to retail purchasers…" (Opp. at 19 (citing ¶¶ 4, 78-79.) But again, paragraphs 4, 78-79 of the Complaint do not contain a single reference to Okhotnikov, instead alleging that "Defendants knew, or were reckless in not knowing[.]" (¶¶ 78-79.) The SEC also points to Complaint paragraphs 13-15, 61, 69, 71, 72, 73, 75, 80, 83-85 as identifying Okhotnikov's alleged fraudulent conduct (Opp. 19-20), **none of which contain a single reference to Okhotnikov**. The SEC's reference to allegations not involving Okhotnikov cannot satisfy Rule 9(b)'s particularity requirement. *Suburban Buick, Inc. v. Gargo*, 2009 WL 1543709, at *4 (N.D. Ill. May 29, 2009) (complaint was inadequate under Rule 9(b) when it did

not "inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant.") (internal citation omitted.))

The few paragraphs that the SEC identifies that actually reference Okhotnikov do not allege with particularity any fraudulent conduct by Okhotnikov. Instead the paragraphs detail non-actionable conduct, such as Okhotnikov's appearance in YouTube videos. (Compl. ¶ 12 (Okhotnikov hosts many YouTube videos and has prior MLM experience); ¶ 16 (alleging that Ellis "appeared [] in a June 3, 2021 interview with Okhotnikov"); ¶ 17 (alleging that Hamlin "conducted a promotional interview of Okhotnikov"); ¶ 18 ("Theissen interviewed Okhotnikov…regarding the launch of Forsage Binance"); ¶ 54 (listing various YouTube videos Okhotnikov participated in); ¶ 55 ("Theissen interviewed Okhotnikov…in another webinar event"); ¶¶ 70, 74 (quoting Okhotnikov in a YouTube video and alleging that because ID 1 does not have an upline profits were retained);[4] ¶77 (alleging on information and belief the amount of money Okhotnikov received); ¶ 81 (listing various YouTube videos Okhotnikov participated in)).

Moreover, the case law cited by the SEC on this point is inapposite. For example, the SEC cites *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022, at *7 (N.D. Ill. Feb. 26, 2019). In *Ulta*, plaintiffs asserted claims against Ulta Beauty and Ulta Salon. *Id.* Ulta Beauty is a holding company that only conducts its operations through its subsidiaries such as Ulta Salon and in Ulta Beauty's SEC filings it collectively referred to Ulta to include its subsidiaries. *Id.* Accordingly, the Court found that group pleading to refer to Ulta Beauty and Ulta Salon, two "intertwined business entities" was permissible group pleading. In this case, however, Plaintiff asserts claims against *eleven individual defendants.* Therefore, unlike *Ulta* where the two defendants were intertwined

---

[4] The SEC's citation to this allegation is puzzling because assuming Plaintiff's allegations are true, Okhotnikov's disclosure is not fraudulent but instead transparently describes the arrangement alleged by Plaintiff.

business entities, group pleading is inappropriate here. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994).

The SEC also refers to *SEC v. Homa*, 2000 WL 1100783, at *4 (N.D. Cal. Ill. Aug. 4, 2000). In *Homa,* the complaint set out the particulars (who, what, when, where, and how) of the fraud as to each individual defendant. *Id.* The *Homa* complaint set out granular detail regarding which defendants issued the securities, which defendants made fraudulent statements in offering documents (and why they were fraudulent), which defendants knew that the promissory notes provided and accounts receivable pledged did not adequately secure the offerings, and exactly when and where the fraud occurred. *See id.* In this case, the Complaint does not set forth the particulars of how Okhotnikov's alleged conduct in connection with Forsage—which allegedly largely consisted of participating in YouTube video interviews—constitutes securities fraud.

Finally, the SEC cites *SEC v. Santos,* 355 F. Supp. 2d 917, 921 (N.D. Ill. Nov. 10, 2003). This case applies the general principle that exactly how much detail Rules 9(b) and 8(a)(2) require depends on the needs of the case. In *Santos*, the court held that the complaint met the particularity requirement because it detailed when the improper payment was made, by whom it was made (naming two of the three defendants), how it was paid (through the third defendant), and how brokers were pressured to make payments. *Id.* The court declined to require additional detail because the defendants were on notice regarding the allegations against them and any other "precise facts surrounding the fraudulent scheme" were in the three defendants' exclusive control. *Id.* Here, the SEC fails to plead the particulars with respect to Okhotnikov's purported role in the

securities fraud and the SEC does not suggest that any additional detail is within Defendants' exclusive control.[5] Accordingly, *Santos* does not save the SEC's claims from dismissal.

A.     **The Complaint Fails to Allege that Okhotnikov Acted with Scienter**

The SEC's opposition concedes that the only allegation supporting Okhotnikov's purported scienter in support of the SEC's securities fraud claims is "Okhotnikov's prior experience with multi-level marketing operations (MLMs)[.]" (Opp. at 21.) Beyond that, the SEC argues that "discovery will reveal the extent of that experience and how he disregarded, either intentionally or recklessly, that unlike a legitimate MLM that offers consumable product...Forsage operated as a pyramid scheme[.]" (*Id.*) But it is well-settled that a plaintiff may not use discovery to provide facts to plead fraud claims. *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F. Supp. 927, 932 (N.D. Ill. 1985); *Petrakopoulou v. DHR Int'l, Inc.*, 626 F. Supp. 2d 866, 870 (N.D. Ill. 2009) (Rule 9(b) requires litigants to conduct more than the usual investigation before bringing fraud claims and is intended to eliminate conclusory fraud claims as a pretext for using discovery to uncover wrongs).[6]

In the Complaint allegations, Okhotnikov consistently denies that Forsage is a pyramid scheme. The SEC asserts that Forsage was a pyramid scheme because it did not offer a consumable product to a bonafide purchaser and goes on to conclude that Okhotnikov should have known it was illegitimate based on his purported "prior experience participating in multilevel marketing []

---

[5] This is especially true here where the SEC has had the benefit of conducting an investigation into Forsage before filing its Complaint. With the benefit of the facts learned during its investigation, the SEC should not be hard pressed to plead with particularity.

[6] While Rule 9(b) may be satisfied by showing that further particulars could not be obtained without discovery, that "rule does not help a party who has made no effort to show that it has been unable to procure the needed information through reasonable investigation." *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 366 F. Supp. 2d 792, 804 (W.D. Wis. 2005) (citing *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1322 (7th Cir. 1998). The SEC does not allege that it cannot procure particulars through reasonable investigation.

projects" without any explication of what his experience entailed. (Compl. ¶ 12; Opp. at 21.) At the same time, however, the SEC alleges that Okhotnikov specifically explained to investors that "I prefer to work without product" and "nobody is coming to [Forsage] for a product." (Compl. ¶ 54.) This disclosure weighs against any inference of knowing fraud by Okhotnikov. Plaintiff's securities fraud claims fail accordingly. *In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 929 (S.D. Ind. 2008) (dismissing securities fraud claim when defendant truthfully informed the investing public).

The SEC argues that Okhotnikov denied that Forsage was a pyramid scheme following accusations by the Montana Commissioner of Securities and Insurance that Forsage was a scheme. However, the Complaint fails to allege that Okhotnikov even knew about the Montana allegations. Therefore, such argument must be ignored. *Laramore v. Illinois Sports Facilities Auth.*, 722 F. Supp. 443, 451 (N.D. Ill. 1989) (rejecting consideration of allegations not included in the complaint). The only governmental allegation that Okhotnikov is alleged to have heard of is the Philippines' accusation. (Compl. ¶ 81(m).) But knowledge of a single allegation does not rise to the level of widespread allegations of fraud allowing for a finding of scienter as in the case law cited by Plaintiff. *Cf. SEC v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 447 (E.D.N.Y. 2016) (finding scienter when defendant was presented with specific materials explaining a legitimate MLM and sought to suppress allegations that scheme was illegitimate such as use of technicians to alter search engine results while knowing that government authorities were investigating the scheme); *SEC v. Milan Cap. Grp., Inc.*, 2000 WL 1682761, at *6 (S.D.N.Y. Nov. 9, 2000) (finding scienter when defendant ignored "significant indici[a] of fraud" such as instructions to conceal share sales from registered broker-dealer, instructions to wire funds to places other than the registered broker-dealer, crude handwritten trade confirmations, and unusual and confusing

disclosure agreement). Accordingly, those cases do not support a finding of scienter here and dismissal is proper.[7]

### B. The Complaint Fails to Allege that Okhotnikov Can be Liable Pursuant to Section 17(a) Because it Only Applies to "Sellers" of Securities

In the SEC's opposition, it asserts that the Complaint's allegations demonstrate that Okhotnikov was a seller of securities[8] because he held Forsage IDs and those IDs were the uplink for thousands of purchasers through sale of those slots to purchasers on the smart contracts. (Opp. at 24 (citing Compl. ¶¶ 12, 71-75, 77).) However, the Complaint alleges that Defendants Ferrari, Sergeev, and Maslakov also held Forsage Ethereum ID 1, Forsage BUSD ID 1, and Forsage Tron ID 1 (Compl. ¶¶ 13-15) and that it was the Forsage.io website (not Okhotnikov) that invited registration on the ID 1 team. (*Id.* ¶ 71.) The Complaint says nothing about *Okhotnikov* soliciting investors' purchase of the slots. Indeed, the Complaint fails to identify what roles the specific Defendants played with respect to content on the Forsage.io website. Accordingly, Plaintiff's Section 17(a) claim fails to allege facts sufficient to demonstrate that Okhotnikov was a seller of securities.

### CONCLUSION

For the foregoing reasons, Defendant Okhotnikov respectfully requests that the Court dismiss the Complaint in its entirety.

---

[7] The SEC wrongly asserts that it only needs to show that Okhotnikov operated a pyramid scheme to demonstrate a violation of Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act. (Opp. at 24.) Indeed, on the proceeding page, Plaintiff admits that those sections require that the defendant act "with the requisite mental state." (Opp. at 23.)

[8] The SEC also disputes whether Section 17(a) applies only to sellers of securities. The statutory language says "*in the offer or sale of any securities*" as opposed to Section 10(b)'s mere "*in connection with* the purchase or sale." This Court has recognized that "the choice of the word 'offer' does seem to suggest a limitation to sellers." *Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F. Supp. 889, 894 (N.D. Ill. 1987).

Dated: January 12, 2023                    Respectfully submitted,

  /s/ James G. Lundy
James Gavin Lundy (IL #6231095)
Foley & Lardner LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
P: 312.832.4500
F: 312.832.4700
jglundy@foley.com

Sergei Kuchinski (IL #6315497)
Kuchinski Law Group, LLC
211 West Wacker Drive, Suite 1723
Chicago, IL 60606
P: 312.765.7365
sergei@kuchinskilawgroup.com

Sami Azhari (IL #6294661)
Azhari, LLC
134 N. Lasalle Street, Suite 444
Chicago, IL 60602
P: 312.626.2871
sazhari@azharillc.com

*Counsel for Vladimir Okhotnikov*

## CERTIFICATE OF SERVICE

I certify that on January 12, 2023, I caused the foregoing **REPLY IN SUPPORT OF DEFENDANT VLADIMIR OKHOTNIKOV'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to be served on the following Parties at the addresses and by the means set forth on the attached Service List.

/s/ James G. Lundy
James Gavin Lundy

## Service List

| | |
|---|---|
| **U.S. Securities and Exchange Commission**<br>Timothy S. Leiman<br>Chicago Regional Office<br>175 W. Jackson Blvd., Suite 1450<br>Chicago, IL 60604<br>Telephone: (312) 353-5213<br>leimant@sec.gov<br><br>Patrick R. Costello<br>Christopher J. Carney<br>Washington, DC Office<br>100 F Street NE<br>Washington, DC 20549-5949<br>Telephone: (202) 551-3982<br>costellop@sec.gov<br>carneyc@sec.gov | By CM/ECF |
| **Mark F. Hamlin**<br>c/o Ryan Willis, Christian Dysart, James Kurosad<br>Dysart Willis<br>530 Hillsborough Street, Suite 200<br>Raleigh, NC 27603<br>ryan@dysartwillis.com<br>christian@dysartwillis.com<br>james@dysartwillis.com | By electronic mail |
| **Sarah L. Theissen**<br>c/o Gregg N. Sofer and Patrick Coffey<br>Husch Blackwell LLP<br>111 Congress Avenue, Suite 1400<br>Austin, TX 78701-4093<br>Gregg.sofer@huschblackwell.com<br>patrick.coffey@huschblackwell.com | By CM/ECF |
| **Carlos L. Martinez**<br>c/o Bruce Lewitas<br>Lewitas Hyman<br>161 N. Clark St., Suite 1600<br>Chicago, IL 60601<br>blewitas@securitieslaw.com | By electronic mail |
| **Ronald R. Deering**<br>c/o Peter King and Cindy Innocent<br>Guerra King P.A.<br>The Towers at Westshore<br>1408 N. Westshore Blvd., Suite 1010<br>Tampa, FL 33607 | By CM/ECF |

| | |
|---|---|
| pking@guerraking.com<br>cinnocent@guerraking.com<br><br>David A. Baugh<br>O'Hagan Meyer, LLC<br>One E. Wacker Drive, Suite 3400<br>Chicago, IL 60601<br>dbaugh@ohaganmeyer.com | |
| **Cheri Beth Bowen**<br>c/o Celiza (Lisa) Bragança<br>Bragança Law LLC<br>5250 Old Orchard Road, Suite 300<br>Skokie, IL 60077<br>Lisa@SECDefenseAttorney.com | By electronic mail |
| **Alisha R. Shepperd**<br>c/o Matthew Mueller<br>Fogarty Mueller Harris, PLLC<br>100 E Madison St., Suite 202<br>Tampa, FL 33602-4703<br>matt@fmhlegal.com | By electronic mail |