**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| *Plaintiff,* | |
| v. | |
| VLADIMIR OKHOTNIKOV, | Case No. 22-cv-03978 |
| JANE DOE a/k/a LOLA FERRARI, | |
| MIKAIL SERGEEV, | |
| SERGEY MASLAKOV, | |
| SAMUEL D. ELLIS, | Hon. Jeremy C. Daniel |
| MARK F. HAMLIN, | |
| SARAH L. THEISSEN, | |
| CARLOS L. MARTINEZ, | |
| RONALD R. DEERING, | |
| CHERI BETH BOWEN, and | |
| ALISHA R. SHEPPERD, | |
| *Defendants.* | |

## MOTION FOR LIMITED LIFT OF STAY

Vladimir Okhotnikov ("Defendant" or "Mr. Okhotnikov"), through counsel, hereby submits this Motion for Limited Lift of Stay (the "Motion") as follows:

### CONFERRAL STATEMENT

Prior to filing, undersigned counsel conferred with relevant counsel at the United States Securities and Exchange Commission ("SEC"), and the SEC takes no position regarding the relief sought herein. Undersigned counsel also conferred with counsel for

the United States Department of Justice ("DOJ") beginning on August 13, 2025. As of the date of this filing, DOJ has not provided its position regarding the relief sought herein.

## I.     INTRODUCTION

Along with several other defendants, Mr. Okhotnikov is subject to parallel civil and criminal proceedings related to his role as co-founder of the cryptocurrency investment platform Forsage.io ("Forsage"). In August 2022, the SEC brought the above-captioned action, claiming Mr. Okhotnikov—and others—committed fraud and the unregistered sale of securities. In February 2023, a grand jury indictment was returned in the District of Oregon implicating Mr. Okhotnikov in a conspiracy to commit wire fraud based on Forsage operations. Shortly thereafter, the DOJ successfully moved to intervene and stay the SEC proceedings subject to the active criminal prosecution. Now, nearly two and a half years later, neither case has advanced at all. Indeed, none of the other defendants in the criminal proceeding have responded to the indictment and Mr. Okhotnikov, who resides outside of the United States and has never visited the country, finds himself in an unnecessary and unfair litigation-induced holding pattern. To alleviate this tension and promote judicial economy, Mr. Okhotnikov requests this Court lift the stay on this matter for the limited purpose of ruling upon his previously submitted

motion to dismiss, subject to amendment.[1] This request is supported by its narrow scope, which avoids prejudicing any party, and by the lack of substantive progress in the related criminal proceedings.

## II.    BACKGROUND

Mr. Okhotnikov is a Russian national who currently resides in the United Arab Emirates and has never traveled to the United States. He is also one of several co-founders of Forsage, the cryptocurrency investment website and platform. At all times relevant to this proceeding, Forsage operated as a decentralized investing tool, which allowed individuals to enter transactions known as "smart contracts" by leveraging different cryptocurrency blockchains, such as Ethereum, Tron, and Binance. Mr. Okhotnikov helped develop Forsage while living in Russia. Forsage launched its system in early 2020 and successfully facilitated decentralized cryptocurrency investments across multiple product offerings.

On August 1, 2022, the SEC brought this lawsuit, alleging five causes of action against eleven individual Defendants, including Mr. Okhotnikov, relating to the operation and marketing of Forsage. The associated Complaint alleged Mr. Okhotnikov was partially responsible for "creat[ing] and launch[ing] the smart contracts

---

[1] Given that the motion to dismiss was originally filed nearly three years ago, Mr. Okhotnikov anticipates amendment may be necessary to account for SEC policy variation and other legal changes.

3

underpinning the entire [Forsage] operation, maintain[ing] the infrastructure to sustain the scheme, and play[ing] a central role in ensuring the operation and success of the Forsage Investment Platforms." (ECF No. 1, Compl. ¶ 62). Based largely on conjecture, the SEC asserted "Forsage is a textbook pyramid and Ponzi scheme." (*Id*. at ¶ 4). Specifically, the SEC characterized Mr. Okhotnikov as "the face" of Forsage due to his regular advertisement of the tool on social media. (*Id*. at ¶ 12; 45). In turn, the SEC alleged Mr. Okhotnikov, who has never traveled to or visited the United States for any reason, committed fraud and illegal security sales under the U.S. Securities and Exchange Acts.

Following the SEC's submission of its Complaint, Mr. Okhotnikov moved to dismiss for lack of personal jurisdiction and failure to state a claim on November 23, 2022 (the "Motion to Dismiss"). (ECF No. 73, Mot. to Dismiss). Mr. Okhotnikov argued that, as a foreign national, he was not subject to the general jurisdiction of this Court and the SEC had otherwise failed to demonstrate specific jurisdiction. (*Id*. at 3–6). He further alleged the SEC failed to state a claim because Forsage's smart contracts and the transactions associated therewith are not securities governed by United States law and that the Complaint failed to alleged fraud with requisite particularity. (*Id*. at 8–16).

Prior to a ruling on Defendant's motion, however, a federal grand jury in the District of Oregon returned an indictment of Mr. Okhotnikov and his fellow Forsage co-founders on February 22, 2023. (ECF No. 138, DOJ's Mot. to Intervene at 2). The indictment alleged the founders engaged in a conspiracy to commit wire fraud pursuant

4

to their use of smart contracts under the Forsage business model. As a result, the DOJ moved to intervene and stay the SEC case on March 24, 2023 (the "Motion to Intervene").

In support of its Motion to Intervene, the government noted that civil cases with overlapping defendants, facts, and law are often stayed subject to parallel criminal proceedings. (*Id*. at 2–3). In particular, DOJ emphasized it would be subject to unfair prejudice should the SEC case proceed because defendants could "obtain civil discovery to which they would not otherwise be entitled in a criminal case, including taking depositions of the government's witnesses." (*Id*. at 5 (citing *SEC v. Downe,* 1993 WL 22126 *12–13 (S.D.N.Y., Jan. 26, 1993))). The government further asserted that other factors used to determine whether a stay is warranted supported the imposition of the same. Specifically, it underscored that the criminal investigation had "ripened" into an indictment and principles of judicial economy disallowed such dual litigation on the same facts. (*Id*. at 5–7). DOJ also noted, correctly, that neither Mr. Okhotnikov nor the SEC objected to the request for stay at the time. (*Id*.). On March 28, 2023, the Court held a hearing by telephone on the government's request. (ECF No. 142, Min. Order). The Court summarily granted the DOJ's motion for the reasons set forth therein.

## III.    LEGAL STANDARDS

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see*

*also In re A.F. Moore & Assocs., Inc.*, 974 F.3d 836, 841–42 (7th Cir. 2020) ("The district court, of course, has broad discretion to decide what [the case's] pace should be."). When analyzing the interstices between related civil and criminal cases, courts may address the necessity of a stay on an ongoing basis. *See, e.g.*, *Cruz v. Cnty. of DuPage*, 1997 WL 370194, at *1 (N.D. Ill. June 27, 1997) (interpreting stay request for a civil rights investigation in favor of related criminal proceedings); *see also Sec. & Exch. Comm'n v. Liberty*, 2020 WL 4677292, at *3 (D. Me. Aug. 12, 2020) (lifting civil proceeding stay following delay in parallel criminal case).

As noted by the DOJ in its Motion to Intervene, courts look to a variety of factors when considering the application of a stay. *See Hare v. Custable*, 2008 WL 1995062, at *2 (N.D. Ill. May 6, 2008). These factors are meant to "balance the interests of the plaintiff, the defendants, and the public." *Id*. Although issues pertinent to the necessity of a stay can differ based on the parties and procedural posture of a dispute, this Court has outlined six relevant factors to determine if a civil stay is warranted in light of parallel criminal litigation:

> "(1) whether the civil and criminal matters involve the same subject; (2) whether the governmental entity that has initiated the criminal case or investigation is also a party in the civil case; (3) the posture of the criminal proceeding; (4) the effect on the public interest of granting or denying a stay; (5) the interest of the plaintiff in proceeding expeditiously, and the potential prejudice the plaintiff may suffer from a delay; and (6) the burden that any particular aspect of the civil case may impose on defendants if a stay is denied."

*Id.*; *see also Salcedo v. City of Chicago*, 2010 WL 2721864, at *2 (N.D. Ill. July 8, 2010); *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 945 (N.D. Ill. 2008); *Cnty. of DuPage*, 1997 WL 370194, at *2.[2] Generally, courts employ the same factors and analyze whether there have been changed circumstances when determining, as is the case here, whether to lift a stay of civil proceedings. *Lynn Scott, LLC v. Grubhub, Inc.*, 2022 WL 10535473, at *2 (N.D. Ill. Oct. 18, 2022) (noting that "changed circumstances" should be analyzed when lifting a stay); *see also Liberty*, 2020 WL 4677292, at *3; *Sec. & Exch. Comm'n v. Heart Tronics, Inc.*, 2013 WL 12209968, at *2 (C.D. Cal. Apr. 15, 2013); *Est. of Goodson v. Franklin Cnty., Ohio*, 2023 WL 3335891, at *1–2 (S.D. Ohio May 10, 2023).

## IV. ARGUMENT

### a. The scope of this request and posture of the parallel criminal proceeding warrant lifting the stay.

Importantly for the purposes of this Motion, Mr. Okhotnikov seeks a lifting of the civil stay for the limited purpose of allowing this Court to rule upon his Motion to

---

[2] This court has employed a similar set of factors specific to discovery stays in civil matters subject to related criminal litigation, including "(a) the interest of the plaintiff in proceeding expeditiously with the litigation or any particular aspect of it, and the potential prejudice to the plaintiff of a delay; (b) the burden which any particular aspect of the proceedings may impose on the defendant; (c) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (d) the interests of persons not parties to the civil litigation; and (e) the interest of the public in pending civil and criminal litigation." *Benevolence Int'l Found., Inc. v. Ashcroft*, 200 F. Supp. 2d 935, 938 (N.D. Ill. 2002); *see also United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 2006 WL 27119, at *2 (N.D. Ill. Jan. 4, 2006); *Nowaczyk v. Matingas*, 146 F.R.D. 169, 174 (N.D. Ill. 1993). This standard overlaps significantly with that described in the *County of DuPage* line of cases and maintains the same central commitment to balancing the interests of all parties. 1997 WL 370194, at *2; *Custable*, 2008 WL 1995062, at *2

Dismiss. Equally critical, Defendant does not ask the Court to open discovery between the parties. Rather, as noted *supra* § II, Mr. Okhotnikov seeks a ruling on his contentions related to lack of personal jurisdiction and failure to state a claim, which are subject either exclusively to pleadings or limited factual inquiry related to jurisdiction. *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 471 (7th Cir. 2020) (Rule 12(b)(6) motions must be based on pleadings); *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 702 F. Supp. 3d 692, 707 (N.D. Ill. 2023) (courts may rely on evidence outside pleadings on a 12(b)(2) motion for the purpose of demonstrating jurisdiction). Mr. Okhotnikov acknowledges, for purposes of the first factor relevant to determining the necessity of a stay, that the subject of the criminal and civil matters at issue are the same. Considering this overlap, he previously did not contest the stay of the civil case. Given the lack of advancement in the criminal matter, however, Mr. Okhotnikov now seeks to efficiently resolve this case through dispositive motions practice alone, rather than remain in gridlock.

### i. Relevant Parties

Courts have regularly emphasized that comity between parties bringing civil and criminal charges against a mutual defendant can result in prejudicial effects warranting stay. Specifically, "[w]hen both actions are brought by the government, there is a danger that the government may use civil discovery to obtain evidence and information for use in its criminal prosecution, and by doing so, circumvent the Fifth Amendment rights against self-incrimination." *Cnty. of DuPage*, 1997 WL 370194, at *3; *see also Chagolla*, 529

F. Supp. 2d at 946 (same). The concern, therefore, is that government entities could operate in concert to conduct discovery in a manner that would prejudice a defendant and compromise their constitutional rights.

Here, the government has clearly brought both actions. Under this factor, however, courts are interested in protecting the discovery rights of a defendant, not the government-plaintiff. *See Salcedo*, 2010 WL 2721864, at *2. As this Motion represents, Mr. Okhotnikov now opposes the imposition of a stay and, in so doing, requests this Court lift the stay for limited purposes. This opposition, therefore, suggests the court should not allow this factor to impede its ability to rule on Defendant's Motion to Dismiss. *See Sec. & Exch. Comm'n. v. Mutuals.com, Inc.*, 2004 WL 1629929, at *4 (N.D. Tex. July 20, 2004) (analyzing the impact of a defendant's opposition to imposition of a stay in an SEC case).

Further, this factor is irrelevant given the limited scope of Mr. Okhotnikov's request. Courts employ this logic for the purpose of protecting against the commingling of discovery power across government entities. Here, Mr. Okhotnikov is not requesting discovery be reopened. He merely asks this Court to reach a ruling on his duly pled dismissal claims under F.R.C.P. 12(b). To do so would require very limited information, if any at all, not already existing in the pleadings. Given this minimal impact to the underlying concern upon which this factor is based and Mr. Okhotnikov's opposition, the shared relationship between charging entities does not weigh in favor of continuing stay of this matter.

9

### ii. Posture of the Criminal Proceeding

Courts generally look to the posture and progress of a related criminal proceeding to determine the necessity of a stay in a parallel civil matter for two purposes: (a) the preservation of discovery; and (b) the consideration of the likelihood of litigation conflict. As the DOJ noted in its Motion to Intervene, if criminal proceedings are ongoing at the same time as a related civil case, there exists "a risk that civil discovery could compromise the criminal investigations." *Salcedo*, 2010 WL 2721864, at *3. For instance, "allowing [a defendant] to obtain civil discovery in this case would circumscribe the restrictive rules of criminal discovery . . . [and] would compromise the ongoing federal investigation." *Benevolence Int'l Found., Inc.*, 200 F. Supp. 2d at 940. Likewise, courts are concerned that, should a civil case be allowed to continue, a defendant could effectively lose their constitutional right to protection against self-incrimination. *Cnty. of DuPage*, 1997 WL 370194, at *3; *see also supra* § IV.a.i. In either case, the active prosecution of a shared defendant subject to civil investigation weighs in favor of a stay. *See Custable*, 2008 WL 1995062, at *2 ("rapidly approaching criminal trial" warranted civil stay).

Courts are reluctant, however, to place an indefinite hold on a civil lawsuit if criminal proceedings are delayed or remote. When a related criminal case is at a "relatively early stage," such as when an indictment is still pending, courts are unlikely to stay parallel civil proceedings. *Cnty. of DuPage*, 1997 WL 370194, at *3. Even when an indictment has been issued, the prospect of significant delay in criminal proceedings can

weigh against staying a related civil dispute. *See Chagolla*, 529 F. Supp. 2d at 946 (noting that the fact some defendants were facing criminal charges did not "significantly" weigh in favor of civil stay "due to the likelihood of significant delay before the charges reach final disposition"); *see also Patrick v. Apple*, 2020 WL 4816015, at *5 (N.D.N.Y. Aug. 19, 2020) ("Court found that the factor of 'the stage of the criminal proceeding' weighed against a stay, noting that the prosecutor . . . had not yet refiled charges two months after it announced its intention to do so and about eighteen months after the alleged criminal conduct occurred."). Indeed, a civil stay is not warranted when a criminal matter has been substantially continued and when "the start of the trial . . . is not certain." *Liberty*, 2020 WL 4677292, at *3 (awarding defendant lift of stay due to significant delays in criminal proceedings).

Although a grand jury indictment had been issued shortly before DOJ's Motion to Intervene in February 2023, criminal proceedings have not otherwise moved forward. According to the criminal docket, none of the other defendants have responded to the indictment. It has been two and half years since the indictment, which is premised upon alleged conduct starting over five years ago. Indeed, criminal proceedings have yet to advance, in part, due to the fact that Mr. Okhotnikov lives outside the Court's jurisdiction and has never been to the United States. As Defendant's Motion to Dismiss indicates, however, he is not subject to the jurisdiction of United States' courts based on the alleged conduct and he is not required to avail himself of such jurisdiction for the purpose of his

11

own prosecution. *See In re Hijazi*, 589 F.3d 401, 407 (7th Cir. 2009) ("[Defendant] is under no obligation to travel to the United States, and as long as he does not enter the country, he cannot forcibly be brought before the Central District of Illinois for his arraignment."); *ee also Kaye-Martin v. Brooks*, 267 F.2d 394, 397 (7th Cir. 1959) (discussing the limits of personal jurisdiction); *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1149 (7th Cir. 1981) (noting principles against self-incrimination).[3]

The indefinite delay caused by the facts and circumstances of the government's proceedings against Defendant and other Forsage founders demonstrates that the posture of criminal proceedings no longer supports a stay. Similarly, given that no discovery has commenced in the criminal matter and is unlikely to for an extended period of time, the underlying discovery concerns affecting both parties pursuant to this factor weighs against continuing the stay. This is particularly true given the limited scope of Defendant's request. There is no threat that this Court's consideration of Mr. Okhotnikov's Motion to Dismiss will negatively impact adjacent criminal proceedings.

### iii. Public Interest & Judicial Economy

Courts have a strong "interest in moving the cases on its docket to an expeditious conclusion." *Nowaczyk*, 146 F.R.D. at 175. Likewise, courts strive to avoid "a duplication

---

[3] Mr. Okhotnikov notes that, unlike the criminal proceeding, he has appeared in this civil matter. As previously indicated, however, he has done so solely in a defensive capacity to challenge the personal jurisdiction of this Court and the SEC's failure to state a claim.

of efforts in . . . criminal and civil proceedings." *All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 2006 WL 27119, at *3. So too, "the public has an interest in ensuring that the criminal process can proceed untainted by civil litigation." *Custable*, 2008 WL 1995062, at *2. "On the other hand, the public has an interest in the prompt disposition of civil litigation, an interest that has been enacted into positive law through the Civil Justice Reform Act of 1990." *Salcedo*, 2010 WL 2721864, at *3. Both the judicial system and the public, therefore, share competing interests to efficiently resolve legal matters while also avoiding duplication or interference between related proceedings.

The posture of proceedings, *see supra* § IV.a.ii, and scope of this Motion demonstrate public and judicial interests would be best served by lifting the civil stay. As noted previously, the underlying concern related to duplication and interference between civil and criminal matters comes primarily from the discovery process. *Benevolence Int'l Found., Inc.*, 200 F. Supp. 2d at 940. Not only is the risk of cross-dispute interference low because the criminal matter has not proceeded past grand jury indictment, but also because this Motion only requests the civil stay be granted to entertain dismissal without discovery. This is not a circumstance in which an impending criminal trial will infect or be infected by civil discovery. *See Custable*, 2008 WL 1995062, at *2. Similarly, instead of letting this matter idly languish as it has done for the last thirty months, Mr. Okhotnikov's request offers this Court the opportunity to efficiently address this case. This limited lift

of the stay, therefore, allows this Court to serve the public's interest to effectively dispose of civil proceedings while simultaneously promoting judicial economy.

### iv. Party Prejudice

The measure of prejudice to the parties underlies each factor used to determine whether a stay—or the lifting thereof—is warranted. *United States v. Certain Real Prop., Commonly Known as 6250 Ledge Rd., Egg Harbor, Wis.*, 943 F.2d 721, 729 (7th Cir. 1991) ("A stay contemplates special circumstances and the need to avoid substantial and irreparable prejudice." (quotations omitted)). Party prejudice typically involves matters of interference between parallel civil and criminal proceedings. Most notably, defendants often cite that civil stays are necessary to preserve Fifth Amendment rights in discovery proceedings. *Cnty. of DuPage*, 1997 WL 370194, at *3. As DOJ noted in its Motion to Intervene, government-plaintiffs regularly seek stays to ensure defendants cannot use liberal civil discovery procedures to spoil criminal prosecution. *Benevolence Int'l Found., Inc.*, 200 F. Supp. 2d at 940. As previously discussed, these discovery concerns are not implicated by Defendant's limited request and should not weigh in favor of maintaining the civil stay. *Liberty*, 2020 WL 4677292, at *3 (discovery concerns "that gave rise to the stay will not be substantially implicated if the Court proceeds to consider [Defendant's] motion for judgment on the pleadings").

Both parties, however, can be prejudiced by a delay in timely resolution of claims in a civil proceeding. *Salcedo*, 2010 WL 2721864, at *3. Courts describe this interest as

14

"substantial given the potential breadth of the ongoing criminal investigations." *Chagolla*, 529 F. Supp. 2d at 947. Here, both parties have an interest in resolving this civil matter in a timely fashion. Further, Mr. Okhotnikov has been prejudiced by the ongoing and indefinite delay in proceedings and wishes to conclude this civil dispute in an efficient manner. *Liberty*, 2020 WL 4677292, at *3. Accordingly, the limited nature of this Motion will not prejudice any party and, in fact, works to support the interests of the same. Particularly in light of Mr. Okhotnikov's current opposition to the stay, each factor previously considered by this court in granting the stay—as demonstrated above—now supports lifting the stay for the limited grounds of considering Defendant's Motion to Dismiss, subject to any amendment which has become necessary in the nearly three years since the Motion's original submission.

## V.    CONCLUSION

For the foregoing reasons, Mr. Okhotnikov respectfully requests the Court grant his motion to lift the stay, imposed subject to criminal proceedings in the United States District Court for the District of Oregon, for the limited purpose of considering and ruling upon his Motion to Dismiss, subject to amendment.

Respectfully submitted,

/s/ *Peter E. Deegan, Jr.*

Peter E. Deegan, Jr.

Todd Rowden

Nancy DePodesta

Carly Chocron

Robert Neel

TAFT STETTINIUS & HOLLISTER LLP

111 East Wacker Drive, Suite 2600

Chicago, Illinois 60601

Tel.: (312) 836-4052

pdeegan@taftlaw.com

trowden@taftlaw.com

ndepodesta@taftlaw.com

cchocron@taftlaw.com

bneel@taftlaw.com

*Attorneys for Defendant Vladimir Okhotnikov*