**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| *Plaintiff*, | |
| v. | Case No. 22-cv-03978 |
| VLADIMIR OKHOTNIKOV, JANE DOE a/k/a LOLA FERRARI, MIKAIL SERGEEV, SERGEY MASLAKOV, SAMUEL D. ELLIS, MARK F. HAMLIN, SARAH L. THEISSEN, CARLOS L. MARTINEZ, RONALD R. DEERING, CHERI BETH BOWEN, and ALISHA R. SHEPPERD, | Hon. Jeremy C. Daniel |
| *Defendants*. | |

**REPLY IN SUPPORT OF MOTION FOR LIMITED LIFT OF STAY**

Vladimir Okhotnikov ("Defendant" or "Mr. Okhotnikov"), through counsel, hereby submits this Reply in Support of Motion for Limited Lift of Stay, as follows:

**I.     INTRODUCTION**

Based on parallel criminal proceedings pursued by the United States Department of Justice ("DOJ"), this Court stayed this United States Securities and Exchange Commission ("SEC") action in March 2023. *See* ECF Nos. 138, 142. Following over thirty months with no progress in the criminal matter, Mr. Okhotnikov filed a Motion for Limited Lift of Stay (the "Motion"), for the narrow purpose of allowing this Court to entertain his previously-filed Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) and (6). As grounds for his request, Mr. Okhotnikov emphasized the

prejudicial nature of the effectively indefinite stay and the minimal interference posed by the request which involves no intrusive discovery.

DOJ's terse response in opposition to the Motion (the "Response"), argues any ruling thereon would require factual inquiry meddlesome to criminal proceedings. It also asserts Mr. Okhotnikov has not been prejudiced because stays are common and the delay persists due to his own opposition to extradition. DOJ's arguments are unavailing. Not only would additional factual inquiry be unnecessary to adjudicate Mr. Okhotnikov's Rule 12(b) motion, but courts are forbidden from the type of factual evaluation DOJ warns against. Moreover, Mr. Okhotnikov's prejudice derives from well-established principles calling for efficient resolution of claims against defendants and 7th Circuit precedent clearly articulates he is under no obligation to voluntarily avail himself of jurisdiction for the purposes of criminal prosecution. Accordingly, Mr. Okhotnikov's Motion remains a narrowly tailored, minimally disruptive, and judicially economic remedy.

## II.    ARGUMENT[1]

### a.    DOJ fails to describe how it would be prejudiced by a limited lift of stay.

DOJ's Response disputes Mr. Okhotnikov's assertion that a limited lift of stay would not meaningfully impact the parallel criminal case. *See* ECF No. 181, pp. 5–6. As a preliminary matter, DOJ's brief argument does not explain how adjudication of the Motion to Dismiss would affect

---

[1] Section II.A of DOJ's Response, stylized as "Applicable Law," is a verbatim reproduction of the opening paragraphs of § III in DOJ's Motion to Intervene and Stay Civil Proceedings ("Motion to Stay"). *Compare* ECF No. 138, pp. 5–7 *with* ECF No. 181, pp. 3–5. As such, Mr. Okhotnikov's Motion is responsive to this section without need for further comment. Notwithstanding this fact, Defendant reiterates this Court has a clear multi-factor test for determining whether to apply or lift a stay. *See, e.g.*, *Hare v. Custable*, 2008 WL 1995062, at *2 (N.D. Ill. May 6, 2008). As was the case with DOJ's Motion to Stay, its Response highlights only some of the relevant factors as "applicable law." DOJ ignores other factors including, most notably, "the interest of the [non-moving party] in proceeding expeditiously, and the potential prejudice the [non-moving party] may suffer from delay." *Id*.

criminal proceedings. Instead, citing that "both sides included declarations and factual assertions that the court would be reviewing," DOJ summarily contends any associated resolution "would require the Court to make some factual determinations that could, in turn, impact the criminal proceedings." *Id*. at 6. DOJ argues Defendant's Motion admits as much, claiming Mr. Okhotnikov advocates for "further factual inquiry to resolve the motion to dismiss." *Id*. This contention, however, contains no discussion of what facts the court would resolve in considering the Motion, nor does it identify how any such facts would impede the criminal case.

DOJ's characterization of Defendant's position and this Court's review of a Rule 12(b) motion is plainly erroneous. Barring special circumstance, motions to dismiss for failure to state a claim patently cannot rely on outside factual inquiry. *See, e.g.*, *Gustafson v. Adkins*, 803 F.3d 883, 888 (7th Cir. 2015) (noting that 12(b)(6) dismissals must be based exclusively on the pleadings). Moreover, as Defendant clearly articulates in the Motion, additional factual inquiry can only be undertaken under Rule 12(b)(2) when considering purely jurisdictional matters. *See Curry v. Revolution Lab'ys*, LLC, 949 F.3d 385, 393 (7th Cir. 2020). Mr. Okhotnikov's appended declaration to the Motion to Dismiss is brief and only considers issues of personal jurisdiction. *See* ECF No. 73–1.[2] At no point, therefore, did Mr. Okhotnikov argue that broad, non-jurisdictional discovery should take place following any lift of stay, nor can such discovery occur. Accordingly, DOJ's warnings about the dangers of "further factual inquiry" in resolving the Motion to Dismiss ring hollow.

---

[2] On the other hand, SEC submitted nearly thirty pages of additional exhibits in its response to the Motion to Dismiss, all of which must be excluded as outside the scope of the pleadings. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (noting that outside materials submitted with a 12(b) motion must be excluded or the motion must be converted into a motion for summary judgment); *see also Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (documents attached to a motion to dismiss are only "considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim").

Lifting the stay's minimal impact is further underscored by the scope of Defendant's request and DOJ's own petition to stay. As both parties have recognized, courts' primary concern regarding the interference of civil matters in parallel criminal proceedings is that a defendant may employ more liberal civil discovery practices to compromise criminal prosecution. *See Salcedo v. City of Chicago*, 2010 WL 2721864, at *3 (N.D. Ill. July 8, 2010) (outlining risk that "civil discovery could compromise the criminal investigations"); *Benevolence Int'l Found., Inc. v. Ashcroft*, 200 F. Supp. 2d 935, 940 (N.D. Ill. 2002) ("allowing [a defendant] to obtain civil discovery . . . . would compromise the ongoing federal investigation"); *see also* ECF No. 181, p. 4. For this very reason, DOJ specifically and repeatedly requested in its Motion to Stay that "[*d*]*iscovery* in this case should be temporarily stayed pending resolution of the criminal case." ECF No. 138, pp. 1, 3, 5, 8 (emphasis added).

Here, Mr. Okhotnikov tailors his request exclusively for the purpose of evaluating the Motion to Dismiss. The Motion does not implicate any of the discovery or factual concerns articulated by DOJ's Response. The Court's charge would be restricted to address discrete legal issues regarding personal jurisdiction and the application of securities law to certain extraterritorial crypto-currency transactions. *See* ECF No. 73. Similarly, allowing such review would judiciously alleviate prejudice caused by indefinite delay. Absent any explanation from DOJ as to how it would be prejudiced or how such a ruling would compromise criminal proceedings, a limited lift of stay is warranted.

### b.   Mr. Okhotnikov is not required to self-surrender in parallel criminal proceedings to have his Motion to Dismiss adjudicated in this matter.

The 7th Circuit has clearly held a defendant "is under no obligation to travel to the United States, and as long as he does not enter the country, he cannot be forcibly brought before [a court] for his arraignment." *In re Hijazi*, 589 F.3d 401, 407 (7th Cir. 2009). This ruling aligns with the

process of limited jurisdiction and the "fundamental principle of our criminal law that a defendant is presumed innocent." *United States v. Addison*, 803 F.3d 916, 921 (7th Cir. 2015); *Kaye-Martin v. Brooks,* 267 F.2d 394, 397 (7th Cir. 1959) (discussing the limits of personal jurisdiction). Yet, turning the presumption of innocence on its head, DOJ asserts Mr. Okhotnikov must voluntarily travel to the United States and be subject to criminal prosecution before receiving an opportunity to adjudicate the Motion to Dismiss. ECF No. 181, p. 6. This contention facially contradicts the ruling in *Hijazi*.

In *Hijazi*, like here, the Court considered whether a defendant not subject to extradition was entitled to receive a "pre-appearance" ruling on his motion to dismiss addressing the "threshold" issues of personal jurisdiction and the application of United States law abroad. 589 F.3d at 408–11. In concluding he was entitled to such remedy, the Court determined the indefinite delay posed by the United States' lack of jurisdiction was prejudicial and Mr. Hijazi's refusal to purposefully avail himself of the court's jurisdiction was not his responsibility. *Id*. at 411. "Just as a long delay can in some circumstances implicate the constitutional right to a speedy trial, a long delay in ruling on a threshold motion like this one will cross the line at some point." *Id*.

DOJ attempts to distinguish *Hijazi* by identifying that, there, the relevant foreign government affirmatively refused to extradite the defendant. *Id*. at 405. The viewpoint of a foreign government without an extradition treaty with the United States, however, does not disrupt *Hijazi*'s central proposition that a defendant need not "voluntarily travel to the United States and present himself for arraignment before the court takes his motions under advisement". *Id*. at 406. Moreover, DOJ's attempt to distinguish *Hijazi* turns a blind eye to its similarities to the case at hand. Neither relevant government had or have their respective defendant in custody. *Id*. at 405. Under the facts of both cases, therefore, the defendants would have to willingly and independently

avail themselves of United States' jurisdiction for domestic prosecution. Similarly, neither defendant had or have ever been to the United States, nor performed illegal activity in the United States. *Id*. As a result, both defendants were subject to indefinite judicial delay and, in turn, submitted 12(b) motions based on extraterritorial application of United States law and jurisdictional challenges. *Id*. at 403. These parallels demonstrate *Hijazi*'s holding equally applies to Mr. Okhotnikov's request for limited review pursuant to prejudicial delay.

To support its contention that the Government would be prejudiced by lifting the stay and any delay is artificially manufactured by Mr. Okhotnikov, DOJ cites a single, unpublished, out-of-circuit decision, *SEC v. Abraaj Inv. Mgmt. Ltd.*, 2019 WL 6498282 (S.D.N.Y. Dec. 3, 2019). True, in *Abraaj*, the Court concluded an indefinite civil stay was allowable even though the defendant's opposition to extradition meant a parallel criminal matter could not proceed. *Id*. at *2. Critically, however, the defendant in *Abraaj* opposed the imposition of the stay for the express purpose of engaging in discovery. *Id*. The Court concluded "a full stay is appropriate in this case" because "a partial stay of discovery could in effect itself circumvent the criminal discovery rules." *Id*. at *3. As discussed *supra* § II.a, Mr. Okhotnikov's request is limited in nature and does not implicate the discovery concerns often emphasized by courts when levying stays under these circumstances. *See Salcedo*, 2010 WL 2721864, at *3. DOJ's use of *Abraaj* is inapt and cannot upset clear 7th Circuit precedent indicating that self-surrender is neither necessary nor the responsibility of a defendant. *Hijazi*, 589 F.3d at 407.

### c. The indefinite delay of any resolution in this case clearly prejudices Mr. Okhotnikov.

Finally, DOJ argues Mr. Okhotnikov "fails to show how he has been prejudiced." ECF No. 181, p. 7. As detailed in the Motion, however, it is well-recognized that Defendants are prejudiced by delay in timely resolution of civil proceedings. *Salcedo*, 2010 WL 2721864, at *3. Courts

describe this interest as "substantial given the potential breadth of the ongoing criminal investigations." *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 945 (N.D. Ill. 2008). Indeed, a civil stay is not warranted when a criminal matter has been substantially continued and when "the start of the trial . . . is not certain." *SEC v. Liberty*, 2020 WL 4677292, at *3 (D. Me. Aug. 12, 2020). Here, Mr. Okhotnikov's case has been stayed for well over thirty months and there has been no progress towards commencing trial. As noted *supra* § II.b, it is unreasonable to blame such a delay on a defendant solely because they decline to voluntarily travel to the United States for appearance in a criminal matter and are not otherwise subject to personal jurisdiction. *Hijazi*, 589 F.3d at 407.

To support the contention that Mr. Okhotnikov has not been prejudiced by the stay, DOJ cites three cases in which courts "have maintained the stay" based on parallel criminal proceedings "for far longer than thirty months." ECF No. 181, p. 7. Importantly, in the first two cases, *SEC v. BitConnect*, 1:21-cv-07349-JGK, (S.D.N.Y. December 15, 2021) and *SEC v. Scworx Corp.*, 2:22-cv-03287-ES-JSA, (D.N.J. Aug. 17, 2022), the stays were not opposed. As DOJ noted in its Motion to Stay, whether a stay is opposed is crucial to determine the propriety of its application. *See SEC v. Mutuals.com, Inc.,* 2004 WL 1629929, at *4 (N.D. Tex. July 20, 2004). In the final case offered by DOJ, *SEC v. Offill, Jr.,* 3:22-cv-00121-N-BK, (N.D. Tex. Dec. 16, 2022), the stay was only partially opposed and, contrary to DOJ's assertion, lasted a far more reasonable, eighteen months. None of these cases present the type of severe, indefinite delay presented here. Neither do they contravene the well-established principle that defendants, court systems, and the public have a valuable interest in the efficient resolution of claims. *See Salcedo,* 2010 WL 2721864, at *3 ("On the other hand, the public has an interest in the prompt disposition of civil litigation, an interest that has been enacted into positive law through the Civil Justice Reform Act of 1990."). When

7

measured with the complete set of factors used to determine whether a stay is proper, the prejudice against Mr. Okhotnikov and the limit interference posed by his request clearly support a lifting of the stay.

## III.     CONCLUSION

For the foregoing reasons, Mr. Okhotnikov respectfully requests the Court grant his motion to lift the stay for the limited purpose of considering and ruling upon his Motion to Dismiss.

Dated:  December 1, 2025                              Respectfully submitted,

**VLADIMIR OKHOTNIKOV**

By:    */s/ Peter E. Deegan*
One of His Attorneys

Peter E. Deegan, Jr. (pdeegan@taftlaw.com)
Todd A. Rowden (trowden@taftlaw.com)
Nancy DePodesta (ndepodesta@taftlaw.com)
Carly A. Chocron (cchocron@taftlaw.com)
Robert Neel (bneel@taftlaw.com)
Taft Stettinius & Hollister LLP
111 East Wacker Drive
Suite 2600
Chicago, Illinois 60601
(312) 527-4000

196299905v2

8